Corey Bishop v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-239-CR

COREY BISHOP APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Following a bench trial, the trial court found Appellant Corey Bishop guilty of aggravated assault with a deadly weapon and sentenced him to ten years’ confinement.  In three points, Bishop complains that the evidence is legally and factually insufficient to support his conviction and that his trial counsel was ineffective.  We will affirm.

II.  Factual Background

Bishop is married to Tonja Haywood.  Tonja and Bishop have one daughter, Cora.  At the time of the incident, Tonja and Cora resided with Crystal Haywood, Tonja’s sister. 

On July 25, 2003, Crystal, Tonja, Cora, and Aaron Dudley, Crystal’s boyfriend, were in Crystal’s second floor apartment.  Sometime in the mid-afternoon, Bishop arrived at the apartment and knocked on the front door. Tonja answered, she and Bishop walked downstairs, and Tonja informed Bishop that her mother thought Cora needed new shoes.  Bishop asked for the cordless phone that Tonja was holding, and he called Tonja’s mother.
 
 
Tonja grabbed the phone away from Bishop and hung up when she determined that Bishop had called her mother.  Shortly thereafter, Bishop and Cora returned upstairs to Crystal’s apartment.

As Bishop sat down in the front room, Dudley, who had been with Crystal in her bedroom, left to go to a convenience store.  Crystal then asked Bishop if he had called her mother and hung up on her.  Bishop responded by saying that her mother needed to “stay out of [his] business.”  Tensions escalated as Crystal and Bishop continued their conversation, and Bishop approached Crystal and struck her in the face with an open hand.  Crystal then retreated to her bathroom and locked the door.  Bishop followed and kicked the bathroom door until it opened.  Crystal ran out of another bathroom door, exited the apartment, and met Dudley, who was returning from the store, by the stairs. Crystal, who appeared upset, told Dudley that Bishop had hit her.  Immediately thereafter, Bishop ran past Crystal and Dudley down the stairs.  Crystal and Dudley returned to the apartment and locked the door.  A few moments later, Bishop returned and kicked the front door until it opened.  Bishop entered and displayed a handgun that was visible to everyone in the apartment; he then threatened Crystal and her family.
(footnote: 2)  After this, Bishop exited the apartment and left.

Tonja called the police, and Officer J. P. Lucas responded.  Officer Lucas arrived at Crystal’s apartment and noticed that Crystal and Tonja were both very excited and hysterical; there was considerable damage to the front door and some damage to the bathroom door.  Crystal provided detectives with a written statement and identified Bishop as the individual described in her statement.  Bishop was charged with aggravated assault with a deadly weapon and pleaded not guilty.  The trial court found Bishop guilty and sentenced him to ten years’ confinement.    

III.  Legal and Factual Sufficiency

In his first point, Bishop argues that the evidence is factually insufficient to sustain his conviction.  In his second point, Bishop argues that “the evidence is legally insufficient to support a finding of knowingly and intentionally causing bodily injury to another.”
(footnote: 3)  Specifically, Bishop contends either that there is no evidence or that the evidence does not support a finding that Bishop “intended to threaten imminent bodily injury or that he knowingly threatened bodily injury.”
 
 Bishop reasons that he “was simply defending himself from the assault of Crystal Haywood” and that “the State’s witnesses can not [sic] be believed” because Tonja and Crystal made good on their threats to have Bishop sent back to prison.  The State, however, maintains that the evidence is both legally and factually sufficient to support Bishop’s conviction. 

A.  Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the judgment 
in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Ross v. State
, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).  
This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the judgment.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In contrast, 
when reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.   

In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

B.  The Evidence is Legally and Factually Sufficient

A person commits the offense of assault if the person “intentionally or knowingly threatens another with imminent bodily injury.”  
Tex. Penal Code Ann.
 § 22.01(a)(2) (Vernon Supp. 2004-05).  An assault becomes aggravated if the person “uses or exhibits a deadly weapon during the commission of the assault.”  
Id
. § 22.02(a)(2).  Intent or knowledge may be inferred from the acts, words, and conduct of an accused at the time of the offense.  
See Hart v. State
, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002).  A person acts intentionally with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.  
Tex. Penal Code Ann. 
§ 6.03(a) (Vernon 2003).  A person acts knowingly with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.  
Id
. § 6.03(b).  Moreover, a person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.  
Id
.  

In the instant case, Bishop and his girlfriend, Monica Lawrence, testified to a somewhat different version of the facts than the State’s witnesses.  Monica testified that she and Bishop drove to Crystal’s apartment to pick up Cora and take her to the park.  Monica said that she waited in the car while Bishop went to get Cora.  Bishop returned to the car and said that Crystal and Tonja were “tripping” because Bishop had arrived with her.  According to Monica, Bishop returned to the apartment and knocked on the door, but came back to the car when no one answered the door.  Bishop did not have a gun with him at any time. 

Likewise, Bishop testified that he argued with Crystal and told her to “get out of my face,” but he did not hit or slap Crystal.  Moreover, he did not kick the door in, wave a gun around, or threaten anyone with a gun.  Vicki Al-Hamad, Bishop’s mother, testified that in one conversation with Tonja on the telephone, she could hear Crystal in the background screaming that Bishop would go to jail.

Despite Bishop’s and Monica’s testimony that Bishop did not intentionally or knowingly threaten Crystal and Tonja, the record contains legally and factually sufficient evidence to support the fact finder’s contrary determinations.  Crystal, Tonja, and Dudley all testified to substantially similar facts.  Crystal and Tonja both testified that Crystal and Bishop argued briefly, and then Bishop struck Crystal in the face.  Bishop kicked in the bathroom door, Crystal ran out of the bathroom, and Bishop passed her and Dudley as he ran down the stairs to the parking lot.  Tonja, Crystal, and Dudley all testified that Bishop then returned to the apartment, kicked in the front door, and, while exhibiting a handgun, threatened to kill Crystal and her family.  Officer Lucas observed considerable damage to the front door and saw some damage to the bathroom door.  Dudley testified that he had been to Crystal’s apartment before the day of the incident and that the doors were not damaged at that time.  With regard to the gun displayed by Bishop after he kicked the front door open, Officer Lucas testified that a firearm is a deadly weapon.  
See 
Tex. Penal Code Ann.
 §§ 1.07(a)(17)(A), 22.02(a)(2) (Vernon Supp. 2004-05).  Considering the acts, words, and conduct of Bishop, sufficient evidence existed for the trial court to find that Bishop did in fact have the appropriate culpable mental state (intentional or knowing) at the time he threatened Crystal and Tonja.  
See id. 
§ 22.01(a)(2); 
Hart
, 89 S.W.3d at 64.  

Bishop argues that Crystal and Tonja fabricated their story of events that transpired that day, and that, thus, the evidence is insufficient.  Officer Lucas arrived shortly after the incident.  Crystal and Tonja were “excited” and somewhat hysterical.  Officer Lucas did not believe that they were making up the story.

The trial court, as fact finder, was entitled to judge the credibility of the witnesses and could have chosen to believe all, some, or none of the testimony presented.  
See Chambers v. State
, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); 
see also 
Zuniga
, 144 S.W.3d at 481.
  Therefore, it was entirely within the province of the trial court to believe Crystal’s and Tonja’s testimony and to disbelieve all or a portion of Bishop’s and Monica’s testimony.  
See Chambers
, 805 S.W.2d at 461.  Thus, 
viewing the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found the essential elements of aggravated assault with a deadly weapon beyond a reasonable doubt.  
Jackson
, 443 U.S. at 319.  Furthermore, viewing all the evidence in a neutral light, favoring neither party, we also conclude that the evidence supporting the verdict, taken alone, is not too weak to support the finding of guilt beyond a reasonable doubt and that the contrary evidence is not so strong that guilt cannot be proven beyond a reasonable doubt.  
Zuniga
, 144 S.W.3d at 481.  Accordingly, we hold that the evidence is both legally and factually sufficient to support Bishop’s conviction for 
aggravated assault with a deadly weapon.  We overrule Bishop’s first and second points.

IV.  Ineffective Assistance of Counsel

In his third point, Bishop contends that his trial counsel was ineffective. The State maintains, however, that Bishop cannot overcome the strong presumption that his trial counsel rendered adequate assistance because Bishop did not bring forward a record supporting his claim of ineffective assistance. 
We apply a two-pronged test to ineffective assistance of counsel claims.  
Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); 
Thompson v. State
, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  First, an appellant must show that 
his 
counsel's performance was deficient; second, an appellant must show the deficient performance prejudiced the defense. 
Strickland
, 466 U.S. at 687, 104 S. Ct. at 2064.

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.  
Thompson
, 9 S.W.3d at 813.  The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.  
See Strickland
, 466 U.S. at 688-89, 104 S. Ct. at 2065.  “[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.”  
Id.
 at 690, 104 S. Ct. at 2066.  An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.  
Thompson
, 9 S.W.3d at 813.  Our scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight. 
Strickland
, 466 U.S. at 689, 104 S. Ct. at 2065.

The second prong of 
Strickland
 requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, that is, a trial whose result is reliable.  
Id.
 at 687, 104 S. Ct. at 2064.  In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  
Id.
 at 694, 104 S. Ct. at 2068.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  
Id.
  The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.  
Id.
 at 697, 104 S. Ct. at 2070.

Generally, the trial record will not be sufficient to establish an ineffective assistance of counsel claim.  
Jones v. State
, 133 S.W.3d 307, 312 (Tex. App.—Fort Worth 2004, no pet.).  This is often the case because a silent record cannot rebut the presumption that counsel’s performance was the result of sound or reasonable trial strategy.  
Strickland
, 466 U.S. at 688, 104 S. Ct. at 2052; 
Mallet v. State
, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).  A record affirmatively demonstrating the alleged ineffectiveness may, however, be provided by a motion for new trial hearing.  
See Jones
, 133 S.W.3d at 312. 
Bishop points to no specific act or omission on the part of his trial 
counsel that rendered her assistance ineffective.  Bishop merely states that “his trial counsel could have argued more forcefully, and in general worked harder to defend him.”  The record demonstrates that trial counsel for Bishop diligently represented him by calling multiple witnesses at both the guilt/innocence and punishment phases of the trial, soundly cross-examining the State’s witnesses, and appearing to be well prepared at all stages of the trial.  Consequently, Bishop’s self-described “blanket contentions” are not firmly founded in the record, and the record does not affirmatively demonstrate any alleged ineffectiveness.  
See Thompson
, 9 S.W.3d at 813.  
Moreover, although Bishop filed a motion for new trial, a hearing was not held on the motion.
  Therefore, Bishop did not demonstrate any alleged ineffectiveness in a motion for new trial hearing.  
See Jones
, 133 S.W.3d at 312.
  Thus, Bishop has failed to rebut the presumption that trial counsel made reasonable decisions and provided effective assistance.  
See Thompson
, 9 S.W.3d at 814.  We overrule Bishop’s third point.

V.  Conclusion

Having overruled each of Bishop’s three points, we affirm the trial court’s judgment. 

SUE WALKER

JUSTICE

PANEL B: DAUPHINOT, HOLMAN, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: February 17, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
Crystal testified, “He had a gun in his right hand, and he was saying that he would kill me, he would kill my whole family, and that I didn’t know him, or I wasn’t  - - I didn’t know what he was capable of.” 

3:
Bishop was charged with threatening bodily injury, not causing bodily injury.  Therefore, we liberally construe Bishop’s point as challenging the sufficiency of the evidence to support a finding of intentionally or knowingly 
threatening 
another with imminent bodily injury.